NO. 15-1948

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Appellee

v.

CHRISTOPHER STEIBING,
Appellant

APPEAL FROM JUDGMENT OF SENTENCE
IN CRIMINAL NO. 14-256 IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIEF FOR APPELLEE UNITED STATES OF AMERICA

ZANE DAVID MEMEGER
United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

JOSEPH J. KHAN
Assistant United States Attorney

615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
(215) 861-8562

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ..................................................1

    I.    Subject Matter Jurisdiction ........................................1

    II.   Appellate Jurisdiction .................................................1

STATEMENT OF ISSUE ............................................................ 2

STATEMENT OF THE CASE ...................................................... 3

    I.    Procedural History ..................................................... 3

    II.   Statement of Facts ..................................................... 4

        A.    Steibing's Criminal Conduct ............................. 4

        B.    Sentencing ....................................................... 9

STATEMENT OF RELATED CASES ............................................14

SUMMARY OF ARGUMENT ......................................................15

ARGUMENT ...........................................................................16

    STEIBING DOES NOT ESTABLISH PLAIN
    ERROR IN THE DISTRICT COURT'S
    CONSIDERATION OF HIS UNSUCCESSFUL
    COOPERATION EFFORTS ...............................................16

        A.    There Was No Error ........................................17

        B.    Steibing's Claim Does Not Satisfy the
             Requirements of a Plain Error Finding .......................... 26

CONCLUSION ........................................................................ 32

# TABLE OF AUTHORITIES

## Cases

*Johnson v. United States,*
    520 U.S. 461 (1997) ..............................................................................16

*Puckett v. United States,*
    556 U.S. 129 (2009) ................................................................. 26, 27

*Rita v. United States,*
    551 U.S. 338 (2007) ................................................................. 20-22

*United States v. Atkinson,*
    297 U.S. 157 (1936) ..............................................................................16

*United States v. Ausburn,*
    502 F.3d 313 (3d Cir. 2007) ............................................................. 24

*United States v. Begin,*
    696 F.3d 405 (3d Cir. 2012) ...................................................... 24, 25

*United States v. Bunger,*
    478 F.3d 540 (3d Cir. 2007) ............................................................. 23

*United States v. Cooper,*
    437 F.3d 324 (3d Cir. 2006) ............................................................. 23

*United States v. Cruz-Aleman,*
    421 F. App'x 165 (3d Cir. 2011) ..................................................... 25

*United States v. Dominguez Benitez,*
    542 U.S. 74 (2004) ............................................................................ 26

*United States v. Flores-Mejia,*
    759 F.3d 253 (3d Cir. 2014) ..................................16, 19, 23-25, 29, 30

*United States v. Frady*,
    456 U.S. 152 (1982) ...............................................................17

*United States v. Friedman*,
    658 F.3d 342 (3d Cir. 2011) ..................................... 24, 25

*United States v. Jackson*,
    467 F.3d 834 (3d Cir. 2006) ........................................... 24

*United States v. Marcus*,
    560 U.S. 258 (2010) ...................................................28, 29

*United States v. Olano*,
    507 U.S. 725 (1993) .........................................................16

*United States v. Padilla*,
    415 F.3d 211 (1st Cir. 2005)........................................... 27

*United States v. Quiles*,
    618 F.3d 383 (3d Cir. 2010) ........................................... 20

*United States v. Schlager*,
    573 F. App'x 106 (3d Cir. 2014) ...................................... 25

*United States v. Sevilla*,
    541 F.3d 226 (3d Cir. 2008)...................................... 24, 25

*United States v. Tomko*,
    562 F.3d 558 (3d Cir. 2009) ........................................... 23

*United States v. Young*,
    470 U.S. 1 (1985) .............................................................17

## Statutes and Rules

18 U.S.C. § 2251 .................................................................... 3

18 U.S.C. § 2256(8)(C) ...................................................... 7, 8

18 U.S.C. § 2422 ................................................................................ 3

18 U.S.C. § 3231 ................................................................................ 1

18 U.S.C. § 3553(a) ................................................................ 9-11, 21, 22

18 U.S.C. § 3742 ................................................................................ 1

28 U.S.C. § 1291 ................................................................................ 1

U.S.S.G. § 3E1.1 ................................................................................ 9

# JURISDICTIONAL STATEMENT

## I. Subject Matter Jurisdiction

Because the defendant was charged in an indictment with violations of federal criminal law, the district court had subject matter jurisdiction over the case pursuant to 18 U.S.C. § 3231.

## II. Appellate Jurisdiction

Based upon the timely filing of a notice of appeal from the order of judgment in a criminal case entered on April 13, 2015, this Court has jurisdiction over this matter under 28 U.S.C. § 1291. In addition, this Court has jurisdiction pursuant to 18 U.S.C. § 3742 to review the sentence imposed on the defendant.

## STATEMENT OF ISSUE

Does the defendant establish that the district court committed plain error in its response to defense counsel's brief comments about the defendant's unsuccessful cooperation efforts where counsel made no complaint or request for clarification after the district court granted a downward variance, cited the defendant's efforts to change his life as the reason for the variance, and asked counsel if he wished to address anything further?

## STATEMENT OF THE CASE

### I. Procedural History

On January 17, 2014, in the Eastern District of Pennsylvania ("the district"), a complaint was filed against defendant/appellant Christopher Steibing, charging him with one count of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422. Steibing was transported from local custody in Bucks County, Pennsylvania (where he had been detained for related charges which were subsequently dismissed) and made his initial appearance in the district on January 21, 2014. He was detained over his objection. On May 20, 2014, a grand jury in the district returned an indictment of Steibing, charging him with one count of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422. On August 5, 2014, the grand jury returned a superseding indictment of Steibing, charging him with one count of production of child pornography, in violation of 18 U.S.C. § 2251 (Count One), and one count of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422 (Count Two). On August 18, 2014, Steibing entered an open plea of guilty to Count Two.

On April 9, 2015, the district court imposed a below-guideline range sentence of 336 months' imprisonment. The court also imposed a term of supervised release of 20 years, a special assessment of $100, and no fine.

The court granted the government's motion to dismiss Count One. Steibing filed a timely appeal.

## II. Statement of Facts

### A.    Steibing's Criminal Conduct.

Steibing victimized and emotionally tormented two young girls: the daughter of a woman who once dated Steibing ("the victim") and Steibing's own daughter.

The victim was between 10 and 11 years old when her mother dated Steibing. App. 34. The victim would later recall that during this time, Steibing was very "aggressive" with her and "intentionally walked in on me on two separate occasions while I was taking a shower for the purpose of seeing me naked." App. 77. Steibing's relationship with the mother ended, but his fixation on the victim did not. Using an array of different online aliases to conceal his true identity, he stalked the victim and surreptitiously contacted her and people she knew via the Internet, beginning when she was 13 years old. App. 34, PSR ¶ 15.

First, Steibing pretended to be "Amanda," who was supposedly a 15-year-old girl. App. 35. Posing as "Amanda," Steibing engaged the victim in online conversations in order to groom her for sexual activity. App. 35, PSR ¶ 15. As "Amanda," Steibing consistently pressed the topic of sexual

intercourse, asking the victim about her sexual history and claiming that she herself ("Amanda") had dated Steibing. *Id.*

As "Amanda," Steibing then introduced the victim to "Cory," who was supposedly a 14-year-old boy whom "Amanda" had dated (but was in fact another of Steibing's online aliases). *Id.* Eventually, the victim believed that she was dating "Cory" even though they had never met in person. App. 35, PSR ¶ 16. As "Cory," Steibing engaged in "phone sex" with the victim, in which one or both participants would masturbate during a telephone conversation. App. 35-36. As "Cory," Steibing also engaged in sexually graphic online "chat sessions" with the victim, in which he induced her to create and distribute child pornography. App 37. He sent the victim several images that purported to be pictures of "Cory's" naked body and asked the victim to send him nude pictures of her. App. 35, PSR ¶ 16. The victim ultimately agreed, taking photographs of herself in poses suggested by Steibing, including sadistic images of child pornography.  App. 35, 58-59, 69-70, PSR ¶¶ 16, 35.

The extent of the defendant's depravity and downright cruelty cannot be overstated. For instance, he not only compelled the victim to take nude photos of herself, but to create a series of images in which she wrote "whore" on her exposed chest and "slut" on her forehead and also inserted a

hairbrush inside both her vagina and mouth. As the district court observed,

it can be "difficult to read about" the details of Steibing's conduct. App. 102.

Additional descriptions of the sadistic imagery that Steibing distributed,

received, and caused to be created is described in further detail in the

government's sentencing memoranda and the presentence report. App. 47-

48, 58-59; PSR ¶¶ 16, 20, 21, 25;  PSR p. 17.

When the victim became reluctant to create and send more child

pornography to "Cory," Steibing blackmailed her. Steibing threatened to

send the images he already had to others, including the victim's family, if

she did not send him even more. App. 36. When the victim refused,

Steibing sent the humiliating pictures of the victim in a "mass e-mail" to her

friends and family, including her grandmother and uncle. App. 36, 76.

When the victim cut off communications with "Cory," Steibing used other

online identities to attempt to contact her, even after she had moved out of

the state. App. 36, 76; PSR ¶ 25. Steibing warned the victim that he would

come to the town to where she had moved and "post the embarrassing

pictures around so that everyone could see them."  App. 76. Steibing then

uploaded these pictures onto image sharing websites for the world to see.

PSR ¶ 19. The victim ultimately believed that her life and the life of her

mother were in danger. PSR ¶ 24. As a result of both the fear and

humiliation that she felt, the victim dropped out of school. *Id.* Not surprisingly, Steibing's vicious crimes caused the victim "irreparable harm," including physical and emotional suffering as well as damage to her relationship with her mother and her ability to interact and trust men. App. 77, 102.

After Steibing's girlfriend discovered images of the victim on his laptop, she evicted him from her home in Pennsylvania and contacted police. PSR ¶¶ 5-9. Steibing transported the laptop to his mother's house in New Jersey. App. 36. New Jersey police executed a search warrant of that house and seized Steibing's laptop, along with an iPod Touch, which collectively contained hundreds of image files depicting the victim. App. 37. A search of Steibing's digital media also confirmed that he was responsible for the creation and distribution of pornographic images of his own daughter, who was depicted at age 11 years old or younger in the images, which police found on Steibing's laptop. PSR ¶ 20.[1] When his daughter was approximately 13 years old, Steibing uploaded these images to numerous image sharing websites and then directed one of her rivals at school to

---

[1] These images of child pornography were created by "photoshopp[ing]" the face of Steibing's daughter onto the bodies of young females engaged in sexually explicit conduct. PSR ¶ 20. *See* 18 U.S.C. § 2256(8)(C) (defining child pornography of identifiable minors in manipulated imagery).

these photographs. *Id.* That girl then distributed the photograph to others at the children's school. *Id.* Steibing also maintained a membership with certain online groups relating to unlawful and deviant sexual activity. PSR ¶ 21. In these forums, he asked strangers to make the images of his young daughter "dirtier and kinkier" by depositing various bodily fluids on "my daughters pics.... 100% real." *Id.* A search of Steibing's laptop contained images of the semen of other men coating the child pornography depicting his daughter.

The police intervention prompted Steibing to delete some evidence that linked him to his crimes, but it did not dissuade him from continuing to stalk the victim. App. 37. He proceeded to create a Facebook account in a name similar to the victim's, used it to "friend" several people that the victim knew, and then sent the victim a "friend" request under this new alias. App. 37, 76. The victim did not feel safe until Steibing was finally arrested in connection with this offense. App. 76. Steibing attempted to evade arrest when the police approached him. PSR ¶ 11. After he was taken into custody, Steibing initially tried to exculpate himself by falsely accusing his own brother as the person responsible for his online crimes. PSR ¶ 12. Steibing then admitted his guilt and attempted to cooperate with the FBI against one of his friends, whom Steibing claimed might also be involved in

trading child pornography. App. 80-81. The FBI sent Steibing's friend "undercover" e-mails which were drafted by Steibing while in custody, but none elicited any response containing child pornography. *Id.*

## B. Sentencing.

At sentencing, it was undisputed that Steibing's advisory guideline range for imprisonment was 360 months to life.[2] The government advocated for a sentence within this range and explained its view of why such a sentence would address each of the sentencing considerations under 18 U.S.C. § 3553(a). App. 45-59, 72-79. Defense counsel, advocating for a sentence no greater than the mandatory minimum sentence of 10 years, focused his analysis almost exclusively on Steibing's personal history and characteristics. App 63-66, 82-88. But even ignoring considerations like protecting the public and promoting respect for the law left the defense with limited room for argument. As the government stated in its memorandum:

---

[2] The United States Probation Office and the court arrived at this range based on a total offense level of 42 and a criminal history category of III. App. 100-01, PSR ¶ 79. The district court overruled the defense's only objection to the guideline calculations, which was a request for a one-level downward adjustment under USSG § 3E1.1, after the government explained why no such adjustment was warranted. PSR, p.17; App. 70, 89-92, 101. But even if the offense level had been lowered by one level to 41, the resulting guideline range would have remained 360 months to life. App. 89.

There are no history or characteristics of this defendant which would mitigate the severity of his criminal conduct. He has not made meaningful contributions to society or even to his own children. To the contrary, his life seems characterized by a pursuit of pleasure, no matter how detrimental the indulgence is for his own well being or that of a child. . . . There is no aspect of the defendant's history and characteristics which is more revealing than his treatment of his own daughter.

App. 51-52.

Steibing did not dispute these characterizations of how he had lived in free society, but argued that he had changed during the two years he had been incarcerated, awaiting the disposition of his criminal case. Acknowledging that his pre-arrest conduct had been "horrible" and "absolutely egregious," App. 98-99, Steibing told the district court that since his arrest, he had taken every available opportunity to become a better person:

I've completely changed. I have a whole different aspect on life. And I'd like to become a contributing member of society, if and when I'm allowed to. That's why I'm taking the classes that I have, that's why I got my GED, that's why I went through drug and alcohol classes. I've done everything that I can, and I'm continuing to do everything that I can to better myself.

App. 100. Steibing also mentioned  his positive adjustment to incarceration by not being "on drugs anymore" and taking medication for bipolar disorder. *Id*. Defense counsel also cited these examples in arguing that Steibing had "changed his life." App. 88. Defense counsel also noted that

- 10 -

after his arrest, Steibing retracted his false denial, admitted his guilt, and
attempted to cooperate with the FBI. App. 63-64. While there was no
dispute that Steibing's attempts to cooperate were unsuccessful and did not
advance any investigation or prosecution, defense counsel appeared to cite
them as evidence that Steibing was no longer the same person who had
preyed on children and tried to escape the consequences of his actions.
Counsel stated:

> [Steibing] appears to be somebody who wishes to do what he can to
> make amends. . . . He made a very forthright and honest attempt at
> cooperation, and I know from talking to him that that was, in large
> part, motivated by the remorse that he felt about the conduct that he
> had engaged in. And while the cooperation was unsuccessful, there's
> no reason to believe that it wasn't forthright or honest in his effort
> . . . .

App. 84-85.

After discussing the Sentencing Guidelines and the application of the
3553(a) factors to Steibing's case, the district court sentenced Steibing to a
prison term of 336 months. App. 100-105. The district court explained that
its balancing of the 3553(a) factors indicated that substantial incarceration
was essential. With respect to the nature and seriousness of the offense, the
court noted Steibing's crimes were "abhorrent," "reprehensible," and had
damaged a young girl for the rest of her life. App. 102. The district court
discussed its obligation to protect the public from Steibing's future crimes,

cited the importance of deterrence, and stated that just punishment "cries out for an extended sentence." App. 103. In addressing Steibing's history and circumstances, the district court adopted some of the government's written arguments. *See, e.g.,* App. 103 ("Nothing has been disclosed about any good works or – that you have engaged in your lifetime. Nothing has been said about your contribution to society, or even to your family, let alone society."). The court noted that while Steibing may have used drugs and suffered from bipolar disorder, these were not reasons to "set aside" the significance of Steibing's crimes. *Id.* But the court reasoned that while it understood the government's "view of the case," the recent change in Steibing's behavior efforts had convinced the court to vary below the guideline range:

> You have stated this morning that you have – now under medication and that you are going to amend your life. And you sound sincere about that. Unfortunately, it's happened pretty late. You caused immense harm before seeing the light . . . . I have not imposed the 360 months because I feel that you may be under – have undergone belatedly a change in your life. However, a sentence must be of a lengthy nature for the sake of the victim and for the sake of society. So the sentence I imposed, I think, is sufficient but not greater than necessary under all the circumstances.

App. 102-04.

After announcing its sentence, the court twice asked the parties if they wished to address anything else. App. 105. Defense counsel raised no

objection to the court's consideration of the defense's arguments nor did he ask the court to clarify its remarks. *Id.* His only response was to retract an earlier accusation about the government's production of discovery materials and to apologize to government counsel for making it. App. 105-06.

## STATEMENT OF RELATED CASES

In connection with the instant offense, the defendant was locally charged with violations of Pennsylvania criminal law in Bucks County, Pennsylvania. The local charges against Steibing were dismissed after he was federally charged by criminal complaint. The government is not aware of any other related case or proceeding that is completed, pending, or about to be presented before this Court or any other court or agency, state or federal.

## SUMMARY OF ARGUMENT

Steibing does not meet his burden of establishing plain error. The record reflects that the district court considered defense counsel's argument that Steibing had recently tried to change his ways, an argument that counsel supported in part by mentioning Steibing's efforts to cooperate with authorities after his arrest. Citing Steibing's recent change, the district court granted a downward variance from the advisory sentencing guideline range, which called for a term of imprisonment between 360 months and life.

Thus, there was no error. And even if there was, Steibing fails to demonstrate on plain error review any reasonable probability that the district court would have imposed a different sentence had it been asked to say more about Steibing's arguments. For this reason as well, the judgment should be affirmed.

## ARGUMENT

## STEIBING DOES NOT ESTABLISH PLAIN ERROR IN THE DISTRICT COURT'S CONSIDERATION OF HIS UNSUCCESSFUL COOPERATION EFFORTS

### Standard of Review

Because Steibing did not object after sentence was imposed, his claim of procedural unreasonableness is reviewed for plain error. *United States v. Flores-Mejia*, 759 F.3d 253, 255 (3d Cir. 2014) (en banc) (unless the defendant objects after sentence is imposed, this Court will review for plain error a claim that the sentencing court did not "meaningfully consider" the defendant's arguments). It is the defendant's burden to establish plain error. *United States v. Olano*, 507 U.S. 725, 734-35 (1993). To do so, he must prove that (1) the court erred; (2) the error was obvious under the law at the time of review; and (3) the error affected substantial rights, that is, the error affected the outcome of the proceedings. *Johnson v. United States*, 520 U.S. 461, 467 (1997). If all three elements are established, the Court may, but need not, exercise its discretion to award relief. *Id.* That discretion should be exercised only in cases where the defendant is "actually innocent" or the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 736, quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936). The "plain-error

- 16 -

exception to the contemporaneous-objection rule is to be 'used sparingly,
solely in those circumstances in which a miscarriage of justice would
otherwise result.'" *United States v. Young*, 470 U.S. 1, 15 (1985), quoting
*United States v. Frady*, 456 U.S. 152, 163 n.14 (1982).

## Discussion

Appellant Christopher Steibing asserts that the district court "plainly
erred by failing to meaningfully consider" his request for a downward
variance based on his unsuccessful cooperation efforts. Br. 12. A review of
the record makes clear, however, that the district court considered
Steibing's arguments and fully discharged its procedural obligations.
Steibing's failure to object is fatal to his claim, which is entirely without
merit.

### A.    There Was No Error.

The district court did not commit any error, and certainly none that
was "plain."

First, Steibing builds his claim upon an unfounded factual premise.
The district court not only granted a downward variance,[3] but explained

---

[3] Steibing characterizes his 336 month sentence, which was two years
lower than the bottom of the guideline range of 360 months to life (and
*continued . . .*

that it had done so because of the possibility that Steibing, albeit
"belatedly," had begun to change his sinister ways while incarcerated. App.
103-04. Steibing acknowledges that the court granted him a downward
variance that took into consideration "his recent efforts at amending his
life," but he suggests that by not expressly regurgitating those efforts
seriatim, the district court left his argument "wholly unaddressed." Br. 7,
10. This strained characterization of the sentencing proceedings is difficult
to reconcile with the full record, particularly defense's counsel's apparent
satisfaction with the sufficiency of the court's remarks.

In asking the district court to consider Steibing's unsuccessful
cooperation efforts "in some regard," defense counsel never articulated any
explicit rationale as to why Steibing's attempts to cooperate warranted any
leniency, let alone a downward variance. App. 85-86. Steibing himself
never mentioned his cooperation efforts, and defense counsel made only
cursory remarks about them. Where it was undisputed that these efforts
bore no fruit, their only apparent relevance was as evidence that Steibing
had tried to become a better person while in prison. *See, e.g.,* App. 84-85

---

incalculably shorter than a life sentence), as the result of a "modest
variance." Br. 7, 10, 13, 17. Since the guideline range was established by an
offense level of 42 and a criminal history category of III, the court's
sentence reflected a downward variance of at least three levels.

(defense counsel linking Steibing's "forthright and honest attempt at cooperation" to his newfound "remorse" and desire to "make amends"); App. 65, 87 (emphasizing that Steibing's efforts were unsuccessful but "forthright attempts").[4] To the extent that defense counsel's remarks advanced the argument that Steibing had undergone a positive change, the district court explicitly considered it in deciding to vary downwards from a range of 360 months to life.

In announcing that *Flores-Mejia* would not apply retroactively, this Court "warned [future defendants like Steibing] that they had a duty to object to the sentencing court's procedural error after sentencing." 759 F.2d at 259. Especially in light of the rule announced in *Flores-Mejia*, the absence of any objection evinces that defense counsel understood, as the record plainly reflects, the sentencing court had responded to his argument when it cited Steibing's recent "change."[5] Indeed, just minutes earlier, defense counsel had complained that the government's analysis of the

---

[4] If counsel secretly believed that Steibing felt his unsuccessful cooperation efforts deserved consideration for some other reason, the district court could not have committed an "obvious" error by failing to address an argument which has never been expressed.

[5] As a veteran attorney with the Federal Community Defender Office for the Eastern District of Pennsylvania, Steibing's counsel worked for the same office that had litigated *Flores-Mejia* a year earlier.

sentencing factors made no mention of Steibing's "very forthright and honest attempt at cooperation." App. 85-86. Defense counsel's statements after the court granted a downward variance, by contrast, contain no complaint, critique, or even request for clarification about the court's comments. App. 105-06.

That is no doubt because the court's statement ("I have not imposed the 360 months because I feel that you may be under – have undergone belatedly a change in your life.") was sufficient to address the defense argument. Under the applicable law, "[a] sentencing court need not analyze explicitly every argument that a defendant puts forward." *United States v. Quiles*, 618 F.3d 383, 397 (3d Cir. 2010) (citations omitted). The case law makes clear that the sentencing record must reflect that the court heard and considered the parties' nonfrivolous arguments, but that having done so, it need not comment on such arguments in any specific manner or to any degree, particularly where, as here, the court elects to impose a sentence that does not exceed the range recommended by the Sentencing Guidelines.

The controlling case, which Steibing does not cite, let alone address, is *Rita v. United States*, in which the Supreme Court stated:

> The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a

judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word "granted" or "denied" on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge's own professional judgment... when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation. Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical.

551 U.S. 338, 356-57 (2007).

In *Rita*, the defendant sought a reduction below the advisory guideline range on the basis of three factors: his health, fear of retaliation in prison, and his military record. In response, the court simply said that the guideline range was "appropriate," and that a sentence outside the guideline range would be "inappropriate." It never commented on the specific grounds for leniency advanced by the defendant. The Supreme Court held:

We acknowledge that the judge might have said more. He might have added explicitly that he had heard and considered the evidence and argument; that (as no one before him denied) he thought the Commission in the Guidelines had determined a sentence that was proper in the mine run of roughly similar perjury cases; and that he found that Rita's personal circumstances here were simply not different enough to warrant a different sentence. But context and the record make clear that this, or similar, reasoning underlies the judge's conclusion. Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered

the evidence and arguments, we do not believe the law requires the
judge to write more extensively.

*Id.* at 356-59.

Exceeding the depth and detail provided by the sentencing court in
*Rita*, the district court here explicitly analyzed nearly all of the 3553(a)
factors in explaining Steibing's sentence, and it specifically referenced
Steibing's claim that he was seeking to lead a more appropriate life. Now,
Steibing insinuates that the audacity of his own crimes made the court's
"visceral reaction" more prone to "overwhelm full and meaningful
consideration of all of the sentencing factors" and claims that the district
court's analysis "essentially boiled down to only one consideration – the
nature of the offense." Br. 10, 16. However one interprets this statement, it
is incorrect. If Steibing is claiming that the district court did not consider
any sentencing factor other than the nature of the offense, his assertion is
flatly belied by the record. See App. 101-03 (district court discussing factors
under 18 U.S.C. § 3553(a), including need for sentence to not only reflect
the nature and seriousness of the offense and the "irreparable harm" to the
victim, but also protect the public and provide just punishment and general
and specific deterrence while being "sufficient but not greater than
necessary"). If Steibing is positing that the district court gave undue weight
to the nature of his offense, his argument is squarely foreclosed by

precedent. *See United States v. Bunger*, 478 F. 3d 540, 546 (3d Cir. 2007)

("district court's failure to give mitigating factors the weight a defendant

contends they deserve [does not] render [] the sentence unreasonable"). [6]

The cases that Steibing cites instead of *Rita* are unavailing. Br. 14-15.

In *Flores-Mejia*, after the defense made a proffer about the value of the

defendant's cooperation efforts, the district court responded only by saying

"Ok, thanks. Anything else?" and denied the defendant's request for a

downward variance. 759 F.3d at 255. Although this Court ultimately

remanded that case for resentencing, it pointedly found the question "a

close issue" under an abuse of discretion standard, which it applied instead

of the plain error rule that would govern future cases such as Steibing's. *Id.*

at 259. Here, the district court granted a downward variance and defense

---

[6] Steibing's brief contains a section with headings which assert that his sentence was "substantively unreasonable," but the actual argument there is that the district "court's failure to explain its sentence, negates the possibility of meaningful appellate review." Br. 22. For the reasons discussed above, the district court adequately explained its sentence. And to the extent that Steibing's description of his sentence as "quite severe" constitutes a substantive challenge, Br. 22, a two-word critique is not a sufficient basis for reversing the district court's sentence. *See United States v. Cooper*, 437 F.3d 324, 330 (3d Cir. 2006) (burden rests on appellant to show unreasonableness, with district court's judgment receiving due deference); *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc) (this Court will not reverse a sentence as substantively unreasonable "unless no sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided").

counsel made no objection, as was then required under *Flores-Mejia* to preserve the issue on appeal. And in the pre-*Rita* decision in *United States v. Jackson*, 467 F.3d 834 (3d Cir. 2006), this Court rejected the defendant's assertion that the district court failed to meaningfully consider his argument that the sentencing range overrepresented his criminal history. There, although the district court did not expressly mention the defendant's argument, its reference to the defendant's "seven prior adult convictions," including two violent offenses, was sufficient to "indicate that the Judge did not believe Jackson's criminal history to be over-represented in the Guidelines calculation." *Id.* at 842.

Other cases cited by Steibing are inapposite. *United States v. Ausburn*, 502 F.3d 313 (3d Cir. 2007), involved a 144-month sentence which was more than double the guideline range, and the district court did not address the defendant's substantive objection to it. In *United States v. Begin*, 696 F.3d 405, 414 (3d Cir. 2012), *United States v. Friedman*, 658 F.3d 342, 363 (3d Cir. 2011), and *United States v. Sevilla*, 541 F.3d 226 (3d Cir. 2008), each district court did not make a record that it even considered the variance requests at issue. These cases do not control here, where the district court made a statement demonstrating that it considered the mitigation argument presented by the defense, and then imposed a

sentence below the guideline range. In this situation, *Rita* holds that the sentencing court need not say anything specific about its reason for denying further leniency.

At most, it may be said that in a case involving a within- or below-guideline sentence, in which a defendant preserved an objection to the purportedly inadequate explanation of a sentence and ordinary review therefore applies, this Court's precedent (in cases such as *Flores-Mejia*, *Begin*, *Friedman*, and *Sevilla*) is in considerable tension with the Supreme Court's decision in *Rita* (which held that saying nothing more than that a guideline sentence was "appropriate" was a sufficient response to specific variance arguments).[7] That conflict need not be resolved here, however, where review is for plain error, and any error most certainly was not plain in light of the Supreme Court's ruling.

In sum, the district court's sentencing explanation was sufficient to address Steibing's claim, and, alternatively, any error was not plain.

---

[7] Indeed, in not precedential opinions, this Court has routinely adhered to *Rita*, finding no error in the failure to address particular sentencing arguments when the court imposed a sentence within or below the guideline range. *See, e.g.*, *United States v. Schlager*, 573 F. App'x 106, 109 n.3 (3d Cir. 2014) (upholding below-guideline sentence); *United States v. Cruz-Aleman*, 421 F. App'x 165, 169 (3d Cir. 2011) (upholding within-guideline sentence).

### B.    Steibing's Claim Does Not Satisfy the Requirements of a Plain Error Finding.

As explained above, Steibing does not establish either of the first two plain error requirements, in that there was no error at all, and definitely none that was plain. For purposes of completeness, we also explain that Steibing does not satisfy the third and fourth prongs as well.

Under the third prong, the defendant has the burden to establish that the error affected his substantial rights. He is obliged to show a "reasonable probability" that, but for the error, the result of the proceeding would have been different. *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004); *Puckett v. United States*, 556 U.S. 129, 142 n.4 (2009).

In *Puckett,* the Supreme Court explained that "[i]f a litigant believes that an error has occurred (to his detriment) during a federal judicial proceeding, he must object in order to preserve the issue." 556 U.S. at 134. "If an error is not properly preserved, appellate court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed.  There is good reason for this; 'anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal.'"

- 26 -

*Id.*, quoting *United States v. Padilla*, 415 F.3d 211, 224 (1st Cir. 2005) (en banc) (Boudin, C.J., concurring).

> The Supreme Court continued:
>
> This limitation on appellate court authority serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them. That court is ordinarily in the best position to determine the relevant facts and adjudicate the dispute. In the case of an actual or invited procedural error, the district court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. And of course the contemporaneous objection rule prevents a litigant from "'sandbagging'" the court -- remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.

*Puckett*, 556 U.S. at 134 (citations omitted).

Accordingly, *Puckett* repeated, a court may grant relief for an unpreserved error only where the party demonstrates a reasonable probability that the result of the proceeding would have been different. Steibing cannot possibly meet that burden. He committed truly heinous crimes, abusing and cruelly and gratuitously tormenting and publicly humiliating a young girl, while also creating and circulating pornographic images of his own daughter as well. In this light, the fact that the district court granted a downward variance reflected notable leniency and consideration of Steibing's very belated efforts to reform himself. Steibing cannot show any likelihood that the district court would have been even

more accommodating had it said more about the erstwhile cooperation,
much less a reasonable probability of such a result.

The most Steibing can muster is that further consideration of his
argument "may very well affect the sentence." Br. 17. But "may very well"
does not suffice. In *United States v. Marcus*, 560 U.S. 258 (2010), the
Supreme Court rejected a presumption similar to that offered by Steibing,
that allowed plain error relief upon a showing of a mere possibility of
prejudice. There, the defendant was convicted of offenses that the
indictment stated occurred between January 1999 and October 2001. On
appeal, the defendant observed for the first time that the statutes he
violated were not enacted until October 2000, and asserted that because
the jury instructions permitted the jury to find him guilty based exclusively
on pre-enactment conduct, the conviction violated the Ex Post Facto
Clause.

The Second Circuit granted relief on plain error review, stating that "a
retrial is necessary whenever there is any possibility, *no matter how
unlikely*, that the jury could have convicted based exclusively on pre-
enactment conduct." *Id.* at 261 (emphasis added by Supreme Court). The
Supreme Court reversed, declaring: "Lower courts, of course, must apply
the [plain error] Rule as this Court has interpreted it," with respect to each

of the four prongs. *Id.* at 262. The Court held that the Second Circuit "standard is irreconcilable with our 'plain error' precedent," *id.* at 263, with regard to the third and fourth prongs. "The third criterion specifies that a 'plain error' must 'affec[t]'" the appellant's 'substantial rights.' In the ordinary case, to meet this standard an error must be 'prejudicial,' which means that there must be a reasonable probability that the error affected the outcome of the trial." *Id.* at 262. Steibing does not come close to meeting this burden.

Indeed, in *Flores-Mejia*, the en banc Court explained that one of the reasons for requiring a timely procedural objection is to prevent "'sandbagging' of the court by a defendant who remains silent about his objection to the explanation of the sentence, only to belatedly raise the error on appeal if the case does not conclude in his favor." *Flores-Mejia*, 759 F.3d at 257. Allowing relief here to Steibing would demolish that goal. If Steibing may obtain relief in this case just by highlighting a variance ground he barely asserted at sentencing, regarding which he stayed silent upon the imposition of sentence, and then saying that the error "may very well affect the sentence," he has created a recipe for automatic reversal and exactly the sort of sandbagging this Court condemned. This result would also entirely defeat the goal of "judicial economy" which animated the

*Flores-Mejia* decision. *See id.* at 258 ("Our strong interest in judicial economy, heightened in these times of fiscal restraint and judicial budgetary concerns, weighs heavily in favor of a rule under which the defendant must contemporaneously object to concerns regarding the procedural reasonableness of a sentence.").

Steibing also does not merit relief under the fourth prong of plain error review. The below-guideline sentence in this case was anything but a miscarriage of justice, and there is no basis for this Court to exercise its discretion to correct any error.

For all of these reasons, Steibing does not establish plain error, let alone justify remanding his case for the district court to say more about his unsuccessful cooperation efforts. Steibing harmed two young girls, humiliated them by distributing horrific images of them to people they knew, and continued to stalk the victim online even after the police confronted him and seized his computer. He preyed upon his own daughter and tried to falsely implicate his brother. When he stood to be sentenced, the best that could be said about him was that he had tried to become a better person while he had been locked away from the rest of society. For these efforts, the district court sentenced him below the guideline range, which otherwise would have allowed for a life sentence. There is no

miscarriage of justice to correct, and the district court's judgment should be affirmed.

# CONCLUSION

For all of the reasons set forth above, the judgment of sentence should be affirmed.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals
Pa. Bar No. 58126

*/s Joseph J. Khan*
JOSEPH J. KHAN
Assistant United States Attorney
Pa. Bar No. 86620

United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8562

# CERTIFICATION

1. The undersigned certifies that this brief contains 6,359 words, exclusive of the table of contents, table of authorities, and certifications, and therefore complies with the limitation on length of a brief stated in Federal Rule of Appellate Procedure 32(a)(7)(B).

2. I hereby certify that the electronic version of this brief filed with the Court was automatically scanned by OfficeScan Real-Time Scan Monitor, version 10.5, by Trend Micro, and found to contain no known viruses. I further certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court.


/s Joseph J. Khan
JOSEPH J. KHAN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this brief has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

Brett G. Sweitzer, Esquire
Federal Community Defender Office for the
 Eastern District of Pennsylvania
Suite 540 West – Curtis Center
601 Walnut Street
Philadelphia, PA  19106-2414


*/s Joseph J. Khan*
JOSEPH J. KHAN
Assistant United States Attorney


DATED:  October 21, 2015.